ROBERTSON, Justice.
Appellee, J. H. Berryman, d/b/a Berry-man Ready Mix, brought suit for damages for breach of contract against Appellant, Frank L. Dennis, d/b/a Dennis Brothers Contractors, and Home Indemnity Company, Inc., in the Circuit Court of Warren County, Mississippi. Through preliminary pleadings, the bonding company was released as a defendant and the suit was transferred to the Circuit Court of Hinds County, the county of residence of the appellant.
After a four-day trial, the jury returned a verdict for $35,000 against appellant. The trial court ordered a remittitur of $10,000 and upon its acceptance by the appellee, judgment was entered for $25,000. Appellant, feeling aggrieved, appealed to this Court.
The appellant assigned as error:
1. The jury verdict and the judgment of the lower court were against the overwhelming weight of the credible evidence.
2. The verdict and judgment in the court below were excessive and not based on the facts in evidence.
3. The lower court was in error in refusing to grant defendant’s motion for judgment notwithstanding the verdict, or in not granting defendant a new trial, and the lower court was in error in entering a completely inadequate remit-titur.
Appellant and appellee entered into a short and simple written contract on June *438 13, 1964, whereby the appellee agreed to furnish and the appellant agreed to purchase, at stated prices, all the ready-mix concrete required by the appellant to construct pilings, culverts and bridges on a section of Interstate Highway 20 in Warren and Hinds Counties. The Agreement was as follows:
“AGREEMENT
We, the undersigned, hereby agree to furnish all concrete on Project 1-20-1 (25) 11, Warren and Hinds Counties, Mississippi, at the following unit prices and in the quantities desired at the convenience of Dennis Brothers Contractors.
Class A Concrete $13.25 per Cubic Yard
Class B Concrete $13.00 per Cubic Yard
Class C Concrete $12.75 per Cubic Yard
Class S Concrete $13.75 per Cubic Yard
We, the undersigned, hereby accept the above prices and agree to this being a binding contract for both parties concerned. We further agree that payment shall be made to supplier within three days after receipt of same.
Witness our hand and seal this 13th day of June, 1964.
/s/ J. H. Berryman
Berryman Ready Mix
P. O. Box 374
Vicksburg, Mississippi
Supplier
/s/ C. L. Puckett
Dennis Brothers Contractors
P. O. Box 9596
Jackson, Mississippi
Purchaser”
It was understood between the parties that the supplier would need to purchase additional equipment in order to perform the contract. On July 7, 1964, the appellee did place an order with Mid-South Machinery Company for two additional trucks with mixing units. About July 21, 1964, C. L. Puckett, representing the appellant, verbally agreed with R. G. Hopkins, President of Mid-South Machinery Company, that Dennis would give Mid-South, along with Traxler Brothers, an assignment of Berryman’s contract in order to guarantee Mid-South a minimum of twelve monthly payments on its sale to Berryman.
Berryman testified that, at the time the contract to furnish concrete was entered into, Puckett advised him that it would be the first week in September, 1964, before appellant would need any concrete, but that Puckett on July 14, 1964, ordered concrete to be delivered to the job on July 17, 1964. On the witness stand, Puckett would only admit that the appellant was about ten days early in requiring delivery of concrete. The appellee delivered ready-mix concrete to the job on Interstate Highway 20 for pouring culverts on July 17, 21, and 22, 1964.
The testimony was conflicting as to how promptly and efficiently the appellee delivered on these three days. The appellee and his witnesses contended that, #ven though called upon six weeks ahead of time *439 to perform on the contract, appellee did deliver ready-mix concrete in a satisfactory manner with only minor delays, such delays being customary and usual in the beginning days of a new project.
The appellant and his witnesses contended very vigorously that there were long delays in the arrival of concrete trucks, that these delays caused an interval of more than 20 minutes between pours contrary to highway department specifications and that cold joints resulted from these delays. The delays were caused by truck breakdowns, inexperienced drivers, incompetency and inefficiency on the part of the appellee, according to appellant and his witnesses. Even though no ready-mix concrete was turned down by highway department inspectors, appellant contended that if cold joints were subsequently discovered he could be called on as the prime contractor to dig out and replace these cold joints at great expense to himself. Highway department engineers did testify that there were cold joints, but they had not required appellant to remedy these because cold joints in culverts were not fatal as they would be in the construction of bridges.
As is usually the case, the estimate of profits to be realized from a completion of the contract varied greatly among the witnesses. Berryman testified that total sales under the contract would have amounted to $88,800, and that $36,178.43 of this would have been profit. Al J. Smith, Jr., civil engineer, testified that Berryman’s profits would have been about $33,090.53. Keith Williams, President of Vicksburg Ready-Mix Concrete Company, called as a witness by appellant, testified that the national average of net profit from the sale of ready-mix concrete was 214’% and that Vicksburg Ready-Mix’s profit ran a little over that.
Puckett testified that on all three delivery days, he complained to the appellee that there were long delays in the arrival of concrete trucks in violation of highway department requirements, and that his performance of the contract was unsatisfactory. He told Berryman that highway department inspectors were getting on him about the delays and that something was going to have to be done to remedy the situation. He further stated that each day the situation got more desperate and finally, on July 23, 1964, he made arrangements with Vicksburg Ready-Mix to furnish concrete instead of the appellee. He remembered that he telephoned appellee on July 23rd, that the contract was terminated because the appellee was not able to perform it satisfactorily.
Berryman testified that Puckett never notified him that the contract had been terminated and that he heard only indirectly, through Traxler, that his contract had been terminated.
The testimony was in irreconcilable conflict and these questions of fact were very properly submitted to the jury to decide. It was a question for the jury as to who first breached the contract; it was their duty and responsibility to determine the amount of the damages.
We think that the $35,000 verdict of the jury was excessive, but the trial judge very properly accepted the duty and responsibility of trying to remedy this. He ordered a $10,000 remittitur; the appellee chose to accept this remittitur rather than a new trial. We can not say that this re-mittitur was inadequate. The final judgment of the trial court for $25,000 damages is supported by substantial evidence and is, therefore, affirmed.
Affirmed.
ETHRIDGE, C. J., and JONES, PATTERSON and INZER, JJ., concur.